CHERRY HILLS RESORT DEVELOP-
MENT COMPANY, A Colorado limited
partnership, Temple H. Buell, as Trust-
ee and Beneficiary under the Temple H.
Buell Trust, and Richard L. Nathan, as
Trustee under the Temple H. Buell
Trust, Petitioners,

v.

The CITY OF CHERRY HILLS VIL-
LAGE; the City of Cherry Hills Village
City Council; Robert St. Clair, Roy A.
Watts, Theodore B. Washburne, George
Anderman, Ann M. Polumbus, Donald
J. Egan and Merle Chambers, as
present members of the City of Cherry
Hills Village City Council, Respon-
dents,

and

Gary A. Agron and Thomas J. Hilb,
Intervenors–Respondents.

No. 86SC156.

Supreme Court of Colorado,
En Banc.

June 6, 1988.

Holme Roberts & Owen, Lawrence L. Levin, Pamela J. Strauss, Englewood, for petitioner, Cherry Hills Resort Development Co.

Greengard, Blackman & Senter, Richard D. Greengard, Denver, for petitioners, Temple H. Buell and Richard L. Nathan.

Morris & Lower, Robert L. Morris, P. Kathleen Lower, Denver, for respondents.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *Cherry Hills Resort Development Co. v. City of Cherry Hills Village*, 720 P.2d 992 (Colo.App.1986), dismissing an appeal by the City of Cherry Hills Village and its City Council to review a judgment entered in a C.R.C.P. 106(a)(4) proceeding and remanding the case to the district court with directions to dismiss the complaint. The court of appeals held that the district court lacked jurisdiction to review the City Council's resolution approving but also imposing various restrictions on Cherry Hills Resort Development Company's development plan for a residential and resort hotel complex in the City of Cherry Hills Village because, in the court of appeals' view, the City Council was not acting in a quasi-judicial capacity in adopting the resolution. We conclude that the City Council exercised a quasi-judicial function in adopting the resolution and that, therefore, the district court had jurisdiction under C.R.C.P. 106(a)(4) to review the City Council's decision. We accordingly reverse the judgment and remand the case to the court of appeals for further proceedings on the merits of the appeal.

I.

In October 1980 Temple H. Buell and Richard L. Nathan, as trustees of the Temple H. Buell Trust, leased 68.8 acres of land in the City of Cherry Hills Village to Cherry Hills Resort Development Company, which intended to develop a residential and resort hotel complex on the land. The land is zoned RA–1 Resort Area District, the only land in the city so designated. Under section 6–11–1 of the City Code of Cherry Hills Village, a permitted use in an RA–1 zoned area is a residential and resort hotel.[1] Section 6–11–4 of the City Code requires the City Council's approval of a development plan in an RA–1 zoned area by providing as follows:

> No building permit shall be issued for any construction within an RA–1 Resort Area District until complete plans are approved (which approval shall not be unreasonably withheld) by the City Council, with the advice of the Planning and Zoning Commission, after consideration of the compatibility of the proposed plans with the City's Master Plan, this Title, a traffic impact study, and existing structures and uses in the neighboring area. These plans must include the location, height and area of all proposed structures, outdoor signs and lighting, as well as the location and details of recreational areas and all accessory structures and roadways.

City of Cherry Hills Village, Colo., City Code, § 6–11–4 (1970).

On August 3, 1982, Cherry Hills Resort Development Company submitted to the City Council a request for approval of a plan that called for the construction of 600 hotel units and 200 residential units on the RA–1 zoned land. The proposed develop-

---

1. Section 6–1–1 of the City Code of Cherry Hills Village defines a "residential and resort hotel" as follows:

   A building, or associated group of buildings, designed for the entertainment of transients as guests for compensation, the residents of which are not predominantly permanent (in the sense of continuous year-round tenancy), and do not have exclusive possession and control of the rented facilities, and the conveniences and facilities of which include, but not by way of limitation, public dining areas, meeting rooms and facilities, retail outlets, room service and housekeeping and maid service. No more than twenty five percent (25%) of the rooms available for rent shall have cooking facilities.

   Section 6–11–1 B of the City Code also provides that any use permitted in an R–1 two and one-half acre residential district is also a permissible use in an RA–1 zone.

ment plan generated a great deal of community interest. The Planning and Zoning Commission and the City Council held numerous meetings with Cherry Hills Resort Development Company and also, although not required to do so by statute or ordinance, gave notice to the developer and to the public and conducted several hearings to allow both the developer and other interested persons to present their views on the plan. On September 21, 1982, the City Council adopted a resolution approving the general concept of the proposed residential and resort hotel complex but imposing twenty restrictions on the development plan.

On October 20, 1982, Buell, Nathan, and Cherry Hills Resort Development Company (hereinafter collectively referred to as "developer") filed a·complaint in the district court seeking judicial review under C.R.C. P. 106(a)(4) of the resolution. The district court concluded that the City Council had abused its discretion in imposing twelve of the restrictions on the development plan as either contrary to or unsupported by the zoning requirements of the City Code, contrary to a controlling state statute, or an invalid imposition on the developer of a duty that was the exclusive responsibility of the City Council.[2] The court accordingly remanded the case to the City Council with directions to delete the twelve restrictions from the resolution.

The City of Cherry Hills Village and its City Council (hereinafter collectively referred to as "the city") appealed from the judgment to the court of appeals, claiming that the district court had erred in concluding that the city had abused its discretion. The court of appeals, on its own motion, issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. After submission of briefs,

the court of appeals dismissed the appeal and remanded the case to the district court with directions to dismiss the developer's C.R.C.P. 106(a)(4) complaint. Drawing on this court's decision in *Snyder v. City of Lakewood,* 189 Colo. 421, 542 P.2d 371 (1975), the court of appeals stated:

> The three factors which must exist in order to find that an inferior tribunal has acted in a judicial or quasi-judicial capacity are:
>
> "1) A state or local law requiring that the body give adequate notice to the community before acting; 2) a state or local law requiring that the body conduct a public hearing, pursuant to notice, at which time concerned citizens must be given an opportunity to be heard and present evidence; and 3) a state or local law requiring the body to make a determination by applying the facts of a specific case to certain criteria established by law."

*Cherry Hills Resort,* 720 P.2d at 993 (quoting *Snyder,* 189 Colo. at 425, 542 P.2d at 374). After concluding that the last *Snyder* factor had been satisfied in this case, the court of appeals held that although the city had given notice of and had conducted public hearings prior to the adoption of the resolution, "such notice and hearing were not required by state or local law." *Id.* at 993–94. In the court of appeals' view, therefore, the first two *Snyder* criteria for quasi-judicial action were not established, with the result that the district court lacked jurisdiction under C.R.C.P. 106(a)(4) to review the city's resolution.

We granted certiorari to consider whether the city's resolution approving but also imposing various restrictions on the development plan constituted quasi-judicial action for the purpose of a judicial review

---

2. The twelve restrictions invalidated by the district court included various building heights, the content of recreational facilities, the type and location of parking facilities, a requirement that the developer provide $500,000 in funding for improvements on the state highways adjoining the development site, the location of a nine-hole golf course at the site, a requirement that the developer negotiate with the adjoining property owners to arrive at a suitable plan for minimiz-

ing adverse sound and view effects from the project, the prohibition of condominiums or other forms of year-round tenancy, the requirement that the resort hotel and retail outlets at the site be of the highest quality comparable to the mobile five-star hotel designation, and the requirement that the developer provide all funds necessary for additional fire equipment as the result of the project.

proceeding initiated in the district court pursuant to C.R.C.P. 106(a)(4).[3]

## II.

In urging reversal of the judgment of dismissal, the developer argues that the court of appeals applied an excessively restricted standard in concluding that the city's resolution did not qualify as quasi-judicial action for the purpose of a C.R.C.P. 106(a)(4) proceeding in the district court. At all times during the pendency of the proceedings in the district court, C.R.C.P. 106(a)(4) provided in pertinent part as follows:

> In the following cases relief may be obtained in the district court by appropriate action under the practice prescribed in these rules:
>
> .   .   .   .   .
>
> (4) Where an inferior tribunal (whether court, board, commission or officer) exercising judicial or quasi-judicial functions, has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy.... Review shall not be extended further than to determine whether the inferior tribunal has exceeded its jurisdiction or abused its discretion.

Before resolving the merits of the developer's claim, it is necessary to consider the nature of quasi-judicial action and to delineate, to the extent practicable, the essential characteristics of this type of governmental decision-making.

## A.

■ Municipal governing bodies, such as a city council, not only perform legislative functions but also engage in activities of a quasi-judicial nature. It is important to distinguish a legislative from a quasi-judicial function because the exercise of quasi-judicial authority, unlike legislative authority, is conditioned upon the observance of traditional procedural safeguards against arbitrary governmental action. These safeguards basically consist of providing adequate notice to those individuals whose protected interests are likely to be adversely affected by the governmental action, and giving to such persons a fair opportunity to be heard prior to the governmental decision. *Mountain States Telephone and Telegraph Co. v. Department of Labor,* 184 Colo. 334, 338, 520 P.2d 586, 588 (1974); *Schoenberg Farms, Inc. v. People,* 166 Colo. 199, 209, 444 P.2d 277, 282 (1968); *South View Cemetery Association v. Hailey,* 199 Ga. 478, 34 S.E.2d 863, 866 (1945); *Buechele v. Ray,* 219 N.W.2d 679, 681 (Iowa 1974); *City of Albany v. McMorran,* 34 Misc.2d 316, 230 N.Y.S.2d 434, 436–37 (N.Y.Sup.Ct.1962).

■ Legislative action is usually reflective of some public policy relating to matters of a permanent or general character, is not normally restricted to identifiable persons or groups, and is usually prospective in nature. *Witcher v. Canon City,* 716 P.2d 445, 449–50 (Colo.1986); *Margolis v. District Court,* 638 P.2d 297, 303 (Colo. 1981); *City of Aurora v. Zwerdlinger,* 194 Colo. 192, 196–97, 571 P.2d 1074, 1077 (1977); *see Developments in the Law— Zoning,* 91 Harv.L.Rev. 1427, 1510–11 (1978). Quasi-judicial action, on the other hand, generally involves a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question. *City and County of Denver v. Eggert,* 647 P.2d 216, 222 (Colo. 1982); *Schoenberg Farms,* 166 Colo. at 209, 444 P.2d at 282; *Board of Supervisors v. Department of Revenue,* 263 N.W. 2d 227, 239 (Iowa 1978); *Appalachian Power Co. v. Public Service Commission,* 162 W.Va. 839, 253 S.E.2d 377, 383–85 (1979); *see* 91 Harv.L.Rev. at 1510–12. This type of decision-making is denom-

---

**3.** During oral argument the city argued that because the resolution did not constitute final governmental action, it was not subject to C.R. C.P. 106(a)(4) review. This issue of finality was not raised before the court of appeals, and we did not include it in the writ of certiorari. We therefore assume the existence of final governmental action for purposes of C.R.C.P. 106(a)(4), and we do not address the issue further in this opinion.

inated "quasi-judicial" precisely because it bears similarities to the adjudicatory function performed by courts. *Handlon v. Town of Belleville*, 4 N.J. 99, 71 A.2d 624, 626 (1950). If a statute or ordinance authorizes the exercise of quasi-judicial authority but does not provide for notice and hearing, these basic requirements may properly be implied as a matter of fundamental fairness to those persons whose protected interests are likely to be affected by the governmental decision. *Juzek v. Hackensack Water Co.*, 48 N.J. 302, 225 A.2d 335, 342 (1966).

### B.

■ In both *Snyder*, 189 Colo. 421, 542 P.2d 371, and *Eggert*, 647 P.2d 216, this court addressed in some detail the nature of quasi-judicial action and the significance of that characterization for purposes of judicial review under C.R.C.P. 106(a)(4). In *Snyder*, homeowners and residents within a three-block area challenged a Lakewood rezoning ordinance by instituting a proceeding under C.R.C.P. 106(a)(4). The ordinance rezoned church property from "residential-one" to "restricted commercial." The district court dismissed the C.R.C.P. 106(a)(4) claim as untimely filed, and this court, in the process of approving that aspect of the district court's ruling, outlined the three factors of quasi-judicial action on which the court of appeals relied in resolving the instant case, namely: (1) a state or local law requiring that the governmental body give adequate notice before acting on the matter; (2) a state or local law requiring the governmental body to conduct a public hearing, pursuant to notice, at which concerned citizens may be heard and present evidence; and (3) a state or local law requiring the governmental body to make a determination based upon an application of legal criteria to the particular facts before it. 189 Colo. at 425, 542 P.2d at 374.

Our decision in *Snyder* proceeded from a recognition that the essence of quasi-judicial action lies not so much in the specific characteristics of the decision-making body as in the nature of the decision itself and the process by which that decision is reached. Although one could possibly read *Snyder* to mean that a preexisting ordinance or statute mandating notice and a public hearing is an indispensable component of quasi-judicial action for the purpose of a C.R.C.P. 106(a)(4) proceeding, we decline to so interpret that case. Such a reading of *Snyder* would lead to the anomaly that a municipal body, after providing notice and a hearing to persons whose property interests will likely be affected by the decision, could conduct a hearing that has all the characteristics of an adjudicatory proceeding, and then render a decision that would be insulated from judicial review under C.R.C.P. 106(a)(4) simply because there was no preexisting legislative mandate for notice and a public hearing with respect to the matter in question. Such a restrictive reading of *Snyder* would virtually eliminate any opportunity for meaningful judicial review of many types of governmental decision-making that in all other respects manifest all the characteristics of quasi-judicial action.

Indeed, *Snyder* emphasized that the state zoning statutes expressly authorized the City of Lakewood to amend its general zoning ordinance after notice and a public hearing and that these same statutes outlined the specific criteria for zoning decisions. 189 Colo. at 425–26, 542 P.2d at 374–75. The significance of the notice and hearing requirements listed in *Snyder*, therefore, lies not in the fact that there must be a statute or ordinance mandating these requirements before quasi-judicial action can occur, but rather in the fact that the existence of a statute or ordinance mandating these requirements is compelling proof that any decision under that legislative scheme is intended to be quasi-judicial in character and thus subject to judicial review under C.R.C.P. 106(a)(4).

Seven years after *Snyder*, we again considered the nature of quasi-judicial action in *Eggert*, 647 P.2d 216. In that case, the County Commissioners of Arapahoe County concluded that the City and County of Denver, which operated a sanitary landfill under a certificate of designation issued pursuant to the Solid Wastes Act, §§ 30–

20–101 to –118, 12A C.R.S. (1986), had expanded its operation beyond the intent and purposes of the certificate by permitting various types of hazardous wastes to be deposited at the landfill. The county commissioners adopted a resolution ordering Denver to cease and desist from the placement and storage of hazardous wastes at the landfill. Denver thereupon initiated a C.R.C.P. 106(a)(4) proceeding challenging the validity of the resolution. The district court determined that because no state or local law required the commissioners to give notice of or to conduct a public hearing before issuing the resolution, the resolution was quasi-legislative in nature and not subject to judicial review under C.R.C.P. 106(a)(4).

■ In reversing the judgment of the district court, we emphasized that the Solid Wastes Act, although not requiring the county commissioners to provide notice and a hearing before issuing a cease and desist order, did authorize the commissioners to revoke or suspend Denver's certificate of designation and expressly required notice and a public hearing prior to the imposition of such sanction. 647 P.2d at 222. We then concluded that the resolution in question was not a generalized conclusion of future applicability, but rather pertained to the immediate parties to the landfill operation and thus was quasi-judicial in nature and within the ambit of C.R.C.P. 106(a)(4) review. *Id.* at 222–23. Since the county commissioners had not provided Denver with adequate notice of the purpose of the hearing at which the resolution was adopted, we reversed the judgment of the district court and remanded the case with directions to dismiss the C.R.C.P. 106(a)(4) complaint. *Eggert* thus clearly stands for the proposition that it is the nature of the decision rendered by the governmental body, and not the existence of a legislative scheme mandating notice and a hearing, that is the predominant consideration in determining whether the governmental body has exercised a quasi-judicial function in rendering its decision.

### C.

While we acknowledge that there is no litmus-like test for identifying quasi-judicial action, we are nonetheless satisfied that the essential characteristics of quasi-judicial action are sufficiently distinct to provide a workable basis for determining whether the jurisdictional prerequisites for judicial review under C.R.C.P. 106(a)(4) have been satisfied. The central focus, in our view, should be on the nature of the governmental decision and the process by which that decision is reached. If, for example, the governmental decision is likely to adversely affect the protected interests of specific individuals, and if a decision is to be reached through the application of preexisting legal standards or policy considerations to present or past facts presented to the governmental body, then one can say with reasonable certainty that the governmental body is acting in a quasi-judicial capacity in making its determination. *See, e.g., Cunningham v. Department of Civil Service,* 69 N.J. 13, 350 A.2d 58, 62–63 (1975); *Handlon v. Town of Belleville,* 71 A.2d at 626; *Orange County Publications Division of Ottaway Newspapers, Inc. v. Council of City of Newburgh,* 89 Misc.2d 847, 393 N.Y.S.2d 298, 302 (Sup.Ct.1977), *aff'd,* 60 A.D.2d 409, 401 N.Y.S.2d 84, *aff'd,* 45 N.Y.2d 947, 383 N.E.2d 1157, 411 N.Y.S. 2d 564 (1978); *Appalachian Power Co.,* 253 S.E.2d at 384–85; *see also* 91 Harv.L. Rev. at 1510–13.

■ The existence of a statute or ordinance mandating notice and a hearing to those persons whose interests are likely to be affected by the decision is a clear signal that the governmental decision is to be regarded as quasi-judicial for the purpose of judicial review under C.R.C.P. 106(a)(4). The fact that there is no such statute or ordinance, however, does not detract from the quasi-judicial nature of the proceeding so long as the decision itself and the underlying process are otherwise consistent with the exercise of quasi-judicial authority, as distinguished from some form of legislative or executive authority. In the absence of legislatively prescribed notice and hearing requirements, it is incumbent upon the gov-

ernmental body to provide adequate notice and an opportunity to be heard to those persons whose protected interests are likely to be affected by the governmental decision. *See, e.g., Eggert,* 647 P.2d at 223; *Juzek,* 225 A.2d at 342.

### III.

■ Turning to the circumstances underlying the adoption of the resolution in this case, we are satisfied that the city exercised a quasi-judicial function in approving the development plan while imposing several restrictions thereon and that the city's action satisfied the jurisdictional prerequisites for judicial review under C.R.C.P. 106(a)(4).

It is undisputed that the resolution adversely affected the developer's property interest in making an economic and beneficial use of the land in question. The resolution pertained only to the use of the particular site in question, and was not a decision affecting future land use on a city-wide basis. Moreover, section 6–11–4 of the City Code of Cherry Hills Village sets forth the criteria by which a proposed development site is to be judged. In adopting the resolution, the city applied these criteria to the proposed development plan under consideration, and did so on the basis of facts developed at the several public hearings conducted by the city. The resolution itself was clearly the type of governmental decision that is traditionally associated with quasi-judicial activity.

Furthermore, the city, although not required to do so by either statute or ordinance, provided adequate notice to the developer and other interested persons of the public hearing on the proposed development plan and provided them with an opportunity to present their views on the plan. Both the developer and other members of the public were made fully aware that the purpose of these hearings was to permit the city to take definitive action on the plan and that approval of the plan would result in the issuance of a building permit for the construction of the project. Since all the requisites for quasi-judicial action were satisfied in this case, the court

of appeals erred when it dismissed the appeal on the basis that the city's resolution did not constitute quasi-judicial action for purposes of C.R.C.P. 106(a)(4).

We accordingly reverse the judgment of the court of appeals and remand the case to that court for consideration of the issues raised on the appeal originally filed in that court.