1
 2025 CO 37 Ashley Hushen, Julie Hushen, Alexandra Weary, and Nicole Weary, Petitioners v. Benjamin Gonzales. Respondent No. 23SC818
Supreme Court of Colorado, En Banc
June 9, 2025
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 22CA696
 
 
          
 Attorneys for Petitioners Ashley Hushen and Julie Hushen:
 Sutton Booker P.C. Katie B. Johnson Joel S. Babcock Denver,
 Colorado
 
 
          
 Attorneys for Petitioners Alexandra Weary and Nicole Weary:
 Zansberg Beylkin LLC Steven D. Zansberg Denver, Colorado
 
 
          
 Attorney for Respondent: Carolyn Pelloux Denver, Colorado
 
 2
 
          
 Attorneys for Amicus Curiae Colorado Department of Early
 Childhood: Philip J. Weiser, Attorney General Megan A.
 Embrey, Senior Assistant Attorney General Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Colorado Department of Regulatory
 Agencies: Philip J. Weiser, Attorney General Russell D.
 Johnson, Deputy Solicitor General Janna K. Fischer, Assistant
 Solicitor General Denver, Colorado
 
 
          
 Attorneys for Amici Curiae Rocky Mountain Victim Law Center,
 Colorado Coalition Against Sexual Assault, Colorado
 Organization for Victim Assistance, Know Your IX, Spark
 Justice Law LLC, and C.A. Goldberg, PLLC: Katherine Houston
 Lakewood, Colorado
 
 
          
 JUSTICE HART delivered the Opinion of the Court, in which
 CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT, JUSTICE
 HOOD, JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE
 BERKENKOTTER joined.
 
 3
 
          
 OPINION
 
 
           HART
 JUSTICE
 
 
          ¶1
 Ashley Hushen and Alexandra Weary were among a number of
 students who came forward to their high school administrators
 with allegations that one of their classmates, Benjamin
 Gonzales,[1] had sexually harassed them. During the
 school's investigation of those allegations pursuant to
 Title IX of the Education Amendments of 1972, Ashley,
 Alexandra, and their mothers provided statements. The first
 phase of the Title IX investigation ended with Benjamin being
 suspended from school for three days. It also led the
 Jefferson County District Attorney to charge him as a
 juvenile for unlawful sexual contact with Ashley, Alexandra,
 and two others. Benjamin was acquitted of all criminal
 conduct. Then, the school reopened the Title IX
 investigation. At the end of that phase of the investigation,
 the school concluded that Benjamin had not, in fact, engaged
 in any conduct that violated its school policies. The record
 shows that all three of the students involved in this case,
 as well as many others at the school, felt traumatized by
 both the school's process and the criminal proceeding. By
 the time all of the proceedings had closed, the students
 involved had graduated from high school.
 
 4
 
          ¶2
 About a year later, Benjamin brought a lawsuit in the
 district court against Ashley, Alexandra, and their mothers,
 alleging defamation and intentional infliction of emotional
 distress based on some of the statements they had made during
 the Title IX investigations. Ashley, Alexandra, and their
 mothers responded by filing a "special motion to
 dismiss" under Colorado's anti-SLAPP statute,
 section 13-20-1101, C.R.S. (2024),[2] arguing that the statements
 they made in the school's investigations were absolutely
 privileged from use in a tort action because they were made
 during a quasi-judicial proceeding.
 
 
          ¶3
 It is this sad background that brings us to this point.
 
 
          ¶4
 Both the trial court and a division of the court of appeals
 concluded that the Title IX proceedings were not
 quasi-judicial. Both courts acknowledged that the proceedings
 addressed the interests of specific individuals by applying
 previously established law or policy to present or past
 facts. See Cherry Hills Resort Dev. Co. v. City of Cherry
 Hills Vill, 757 P.2d 622, 627-28 (Colo. 1988). But they
 determined
 
 5
 
 that the proceedings were nonetheless not quasi-judicial
 because they suffered from significant procedural
 shortcomings. One consequence of these rulings is that the
 accused can move forward with a civil tort suit against his
 accusers because they complained about perceived sexual
 harassment as part of a Title IX investigation designed and
 conducted by their high school. Another related consequence
 may be that other students will be deterred from coming
 forward in the face of sexual harassment at school.
 
 
          ¶5
 Recognizing the significance of these consequences, we
 clarify here that whether a proceeding is quasi-judicial is a
 separate inquiry from whether that proceeding offers
 sufficient due process. The first question is important for
 determining whether participants in the proceeding are
 entitled to assert privilege, protecting them from tort
 liability for the statements they make during that
 proceeding-the issue in this dispute. The second question-the
 adequacy of the process provided-is an essential one. It is,
 in fact, a constitutional question. The right to due process
 is fundamental, and participants in a public proceeding that
 determines their rights or obligations are entitled to
 challenge that proceeding for its lack of due process. But
 that is a separate question from whether the proceeding
 itself is, under Colorado law, a quasi-judicial proceeding.
 
 
          ¶6
 Determining whether a proceeding is quasi-judicial is a
 relatively easy threshold issue. However, the issue of
 whether that proceeding met the
 
 6
 
 requirements of due process-either as it was designed to be
 run or as it actually was run-is a difficult question that
 often forms the entire basis of a lawsuit. Combining those
 two questions unnecessarily complicates a court's
 quasi-judicial analysis and could result in disparate
 outcomes in similar proceedings-e.g., a Title IX
 investigation, an attorney discipline matter, or an employee
 disciplinary process-from one case to another.
 
 
          ¶7
 We therefore take this opportunity to clarify that a
 proceeding is quasi- judicial if it involves (1) a
 determination of the interests, rights, or duties of specific
 individuals and (2) the application of current law or policy
 to past or present facts. We explained in Cherry
 Hills that, "[t]he existence of a statute . . .
 mandating [some basic due process] . . . is a clear signal
 that the governmental decision is to be regarded as
 quasi-judicial," 757 P.2d at 627, but we have never said
 that due process protections are required to identify a
 proceeding as quasi-judicial. Instead, whether a proceeding
 meets the requirements of due process is a question to be
 answered on its own. With these principles in mind, we
 reverse the decision of the court of appeals and remand for
 further proceedings consistent with this opinion.
 
 
          I.
 Facts and Procedural History
 
 
          ¶8
 Ashley, Alexandra, and Benjamin all attended Evergreen High
 School ("EHS"), a public high school in the
 Jefferson County School District (the
 
 7
 
 "District"). The three students began their junior
 year in the fall of 2018. In September 2018, Ashley and
 Alexandra reported allegations of verbal and physical
 harassment by Benjamin to school administrators. Two other
 EHS students also reported allegations of verbal and physical
 harassment at that time. The District opened a Title IX
 investigation. Benjamin was suspended for three school days
 at the end of the month, prior to the conclusion of the
 investigation. The reasons for that timing are not apparent
 in the record.
 
 
          ¶9
 Pursuant to its obligations under Title IX, the District had
 established specific grievance procedures to address formal
 complaints of sexual harassment, such as those filed by
 Ashley, Alexandra, and other students at EHS.[3] This is the
 process that is supposed to be followed when a complaint is
 filed. ¶10 Under the District's published
 procedures, the filing of a formal complaint initiates the
 investigation phase of the grievance process. Jeffco Public
 Schools,
 
 8
 
 Title IX Policies and Procedures: Sex-Based
 Discrimination and Sexual Harassment,
 https://www.jeffcopublicschools.org/services/legal/title-ix
 [https://perma.cc/ 9TNQHV7Z]. First, the Title IX
 coordinator provides written notice of the allegations and
 the grievance process to all parties. Id. Although
 "[t]he specific steps of the investigation will vary
 based on the nature of the allegations and other
 factors," the District always carries the burden of
 gathering evidence to determine whether the reported conduct
 occurred. Id. After gathering that evidence, the
 District's Title IX investigator creates an investigative
 report summarizing what it found. Id.
 
 
          ¶11
 Before the investigator's report is finalized, the
 parties have an equal opportunity to inspect and review any
 evidence the District obtains and to submit a written
 response. Id. After the report is finalized, the
 investigator sends it to both parties who, again, can provide
 written responses before the investigator submits the final
 report to the decision-making panel. Id.
 
 
          ¶12
 The District's decision-making panel then considers the
 investigative report and any written responses. Id.
 It also gives each party the opportunity to submit written
 questions for any other party or witness, respond to those
 questions, and submit limited follow-up questions.
 Id. The decision-making panel issues its
 determination in writing, including its findings of fact,
 rationale, and imposition
 
 9
 
 of any disciplinary sanctions. Id. Any party can
 appeal the decision-making panel's determination,
 triggering the District's process for reviewing appeals.
 Id.
 
 
          ¶13
 The record suggests that this District process was not
 followed during the first phase of the Title IX investigation
 into student complaints about Benjamin's conduct.
 Alexandra submitted a written description of an alleged
 offense to EHS on September 18. Benjamin submitted a written
 response on September 19. That same day, two other students
 submitted written descriptions of alleged offenses to EHS. On
 September 26, Benjamin submitted a written response to the
 accusations, alleging that "the offense did not
 happen." Alexandra submitted another written statement
 alleging that Benjamin had inappropriately touched Ashley and
 one other student. Ashley submitted her own written statement
 as well. The record indicates that Benjamin and another
 student, who he said was present during the alleged
 incidents, were questioned in person by a school official
 regarding the accusations in the written submissions. In late
 October, the District found, by a preponderance of the
 evidence, that Benjamin had violated one or more of its
 policies. Benjamin and his parents submitted a written
 request for the District's superintendent to review that
 determination, but the District did not grant this request.
 By November 2018, Benjamin had enrolled at Columbine High
 School.
 
 10
 
          ¶14
 Following the District's investigation, the Jefferson
 County District attorney's Office pursued juvenile
 delinquency charges against Benjamin for three counts of
 unlawful sexual contact. His trial occurred in December 2019,
 and he was acquitted of all charges. The trial court ordered
 that Benjamin's criminal records be expunged pursuant to
 section 19-1-306(5)(a), C.R.S. (2024). The order included the
 expungement of "[r]eferences to the criminal case or
 charge contained in the school records." People v.
 Gonzales, No. 18JD726 (Dist. Ct., Jefferson Cnty., Dec.
 20, 2019) (quoting § 19-1-306(10)(h)). In January 2020,
 Benjamin, citing the trial court's expungement order,
 sought to have the outcome of the District's Title IX
 investigation also removed from his school records.
 
 
 15 About a month later, rumors began circulating that
 Benjamin might be permitted to return to EHS to complete his
 senior year. Worried that Benjamin would be returning to the
 school when they had believed he would never do so, some
 parents, including Ashley's and Alexandra's, emailed
 school officials voicing their concerns. In March 2020, the
 District rescinded its October 2018 Title IX finding and
 reopened the investigation. During the reopened
 investigation, the District considered supplemental reports
 and responses from the complainant students, supplemental
 witness interviews, trial transcripts, and forensic interview
 transcripts. On July 8, 2020, the District concluded that the
 evidence did not support a finding that Benjamin had violated
 its sexual harassment/assault
 
 11
 
 policies. Again, the record does not demonstrate that the
 school followed its own Title IX policies in this second
 phase of the investigation. In any event, Benjamin and his
 classmates had graduated from high school at this point.
 Benjamin did not return to EHS.
 
 
          ¶16
 Approximately one year later, Benjamin sued Ashley,
 Alexandra, and their mothers, alleging defamation and
 intentional infliction of emotional distress based on
 statements they had made during the District's Title IX
 investigation. He sought compensatory damages; damages for
 past, present, and future pain and suffering; psychological
 pain and suffering; loss of reputation; loss of quality of
 life; statutory interest; expert fees; and attorney fees and
 costs. Ashley, Alexandra, and their mothers moved to dismiss
 the tort suit under section 13-20-1101, Colorado's
 anti-SLAPP statute. They asserted that the statements they
 made during the Title IX investigation were protected
 activity under that law and, as relevant here, that their
 statements were absolutely privileged as statements made in a
 quasi-judicial proceeding and could not be used to subject
 them to tort liability.[4]
 
 12
 
          ¶17
 The trial court addressed each of the communications that
 formed the basis of the lawsuit to determine whether any of
 them were subject to absolute privilege and thus protected
 under the anti-SLAPP statute. The court reasoned that the
 application of absolute privilege is determined through an
 objective analysis of the procedural safeguards applied in a
 proceeding. Because the court found that the District's
 Title IX investigation was not adversarial in nature and had
 procedural shortcomings-especially as applied-it concluded
 that the investigation was not quasi-judicial and, therefore,
 the communications were not absolutely privileged.
 Accordingly, the court denied the motion in part and ruled
 that Benjamin's claims could proceed.[5]
 
 
          ¶18
 A division of the court of appeals affirmed this conclusion,
 ruling that the District's Title IX investigation could
 not justify affording absolute privilege to Alexandra's,
 Ashley's, or their mothers' statements. Gonzales
 v. Hushen, 2023 COA 87, ¶ 44, 540 P.3d 1268, 1282.
 It first considered what kind of proceeding could be deemed
 "quasi-judicial" for answering this question.
 Id. at ¶¶ 27-51, 540 P.3d at 1279-1283.
 The division concluded that Colorado's basic definition
 of a quasi-judicial proceeding-one that "involves a
 determination of the rights, duties, or
 
 13
 
 obligations of specific individuals on the basis of the
 application of presently existing legal standards or policy
 considerations to past or present facts," Cherry
 Hills, 757 P.2d at 625-was insufficient in this context.
 Gonzales, ¶ 59, 540 P.3d at 1285. Instead, the
 division reasoned that an inquiry into whether a proceeding
 is quasi-judicial, for purposes of determining if statements
 made during that proceeding are entitled to absolute
 privilege, must consider whether the proceeding contains
 sufficient procedural safeguards, including procedures
 through which a party can test the veracity of the other
 party's statements. Id. at ¶ 60, 540 P.3d
 at 1285. The division concluded by setting a high bar for the
 safeguards that would render such proceedings quasi-judicial.
 See id. at ¶¶ 52-64, 540 P.3d at 1284-1286
 (suggesting a requirement of a hearing, a right to call
 witnesses and cross-examine witnesses, a requirement of live
 interviews of witnesses, a requirement that statements be
 provided under oath, and a right to robust participation by
 counsel).
 
 
          ¶19
 Ashley, Alexandra, and their mothers petitioned this court
 for certiorari review, and we granted the
 petition.[6]
 
 14
 
          II.
 Analysis
 
 
          ¶20
 We review de novo whether a proceeding is quasi-judicial for
 purposes of applying absolute privilege to statements made in
 the proceeding or offering absolute immunity to individuals
 involved in the proceeding. Churchill v. Univ. of
 Colo. at Boulder, 2012 CO 54, ¶ 42, 285 P.3d
 986, 1000.[7]
 
 
          ¶21
 A quasi-judicial proceeding is subject to judicial review
 under C.R.C.P. 106(a)(4). The hallmarks of quasi-judicial
 proceedings are uncomplicated and well defined in Colorado.
 In Cherry Hills, we considered the essential
 characteristics of such a proceeding, 757 P.2d at
 625-28, and we have consistently applied those
 characteristics in subsequent cases. As we said almost forty
 years ago:
 
 
 The central focus, in our view, should be on the nature of
 the governmental decision and the process by which that
 decision is reached. If, for example, the governmental
 decision is likely to adversely affect the protected
 interests of specific individuals, and if a decision is to be
 reached through the application of preexisting legal
 standards or policy considerations to present or past facts
 presented to the governmental body, then one can say with
 reasonable certainty
 
 15
 
 that the governmental body is acting in a quasi-judicial
 capacity in making its determination. Id. at 627.
 
 
          ¶22
 We observed in Cherry Hills that a statute or
 ordinance mandating specific procedural safeguards is a
 "clear signal that the governmental decision is to be
 regarded as quasi-judicial." Id. At the same
 time, we emphasized that those kinds of legal indicia are not
 required to make a process quasi-judicial. Id. And
 we stressed that, regardless of whether such legal indicia
 exist, "it is incumbent upon the governmental body to
 provide adequate notice and an opportunity to be heard to
 those persons whose protected interests are likely to be
 affected by the governmental decision." Id. at
 627-28. Beyond those statements about procedural safeguards,
 we said nothing.
 
 
          ¶23
 We have made this same basic point repeatedly. In Widder
 v. Durango School District No. 9-R, 85 P.3d 518, 527
 (Colo. 2004), for example, we rejected the argument that a
 proceeding could not be quasi-judicial unless notice and a
 hearing were legally mandated. We explained that notice and a
 hearing requirement would be "'a clear signal that
 the governmental decision is to be regarded as
 quasi-judicial'" but that these factors are not the
 "sine qua non of quasi-judicial action."
 Id. at 527 (quoting Cherry Hills, 757 P.2d
 at 627). Instead, we emphasized again what we had said in
 Cherry Hills: What makes an action quasi-judicial is
 the impact
 
 16
 
 on the protected rights of specific individuals and a
 decision reached through preexisting legal standards applied
 to present or past facts. Id.
 
 
          ¶24
 We acknowledge that in Widder, as in a number of our
 other cases, we have referred to "the process
 by which [a] decision is reached" as important to the
 inquiry. Id. (emphasis added). In this context,
 however, the word "process" refers to the
 "application of preexisting legal standards ... to
 present or past facts" and not to any specific
 procedural requirements. Id. (quoting Cherry
 Hills, 757 P.2d at 627). A number of our other cases
 have been read to suggest procedural requirements
 that go well beyond Cherry Hills. Today we clarify
 that the language in those opinions has been misunderstood.
 There are no independent procedural requirements that make a
 process quasi-judicial. Cherry Hills, 757 P.2d at
 627-28. ¶25 Of course, many agencies do impose their own
 procedural requirements, and much of the confusion in
 developing caselaw has come from that fact. Take
 Hofflerv. Colorado Department of Corrections, 27P.3d
 371 (Colo. 2001), the case the division cited to support its
 holding that significantly more procedural safeguards are
 required to conclude that a proceeding is quasi-judicial for
 purposes of absolute immunity. Gonzales,
 ¶¶ 41, 45-50, 540 P.3d at 1282-83.[8] Hoffler worked
 
 17
 
 for the Department of Corrections, and that department's
 disciplinary process specifically required an adversarial
 hearing at which the employee is entitled to representation
 and to conduct cross-examination, among other things.
 Hoffler, 27 P.3d at 373-74. We determined that the
 proceeding was quasi-judicial and that Hoffler's
 statements were entitled to privilege against civil tort
 liability. Id. at 375. ¶26 The division relied
 heavily on Hoffler, reasoning that our determination
 that the proceeding was quasi-judicial focused on the
 specific procedural safeguards, which it deemed
 "critical" to our conclusion in that case.
 Gonzales, ¶ 46, 540 P.3d at 1283. All that we
 were doing in Hoffler, however, was describing the
 extensive procedural safeguards that the agency itself had
 chosen to put in place. While those safeguards were certainly
 evidence of the quasi-judicial nature of the proceeding, they
 were not prerequisites, and we did not suggest that they
 were.
 
 18
 
          ¶27
 Today we clarify Hoffler in the same manner that our
 decision in Cherry Hills clarified our earlier
 opinion in Snyder v. City of Lakewood, 542 P.2d 371
 (Colo. 1975). In Snyder, we had suggested that a
 proceeding could only be quasi-judicial if there was a state
 or local law requiring a particular governmental body to make
 a decision subject to particular procedural standards. 542
 P.2d at 374. We rejected that notion in Cherry
 Hills, emphasizing the importance of focusing on the
 same points we have focused on here: that a proceeding
 addresses the interests of specific individuals and that a
 decision is reached through the application of preexisting
 laws or policy considerations to present or past facts.
 757 P.2d at 626-27.
 
 
          ¶28
 The division's conclusion that a proceeding "must
 contain sufficient procedural safeguards to ensure
 reliability and fundamental fairness,"
 Gonzales, ¶ 50, 540 P.3d at 1283, does not
 belong in the quasi-judicial inquiry. Whether a proceeding
 (either as written or as conducted in practice) contained
 sufficient procedural safeguards is instead a question of due
 process. Due process questions can, of course, always be
 raised.[9]
 
 19
 
          ¶29
 We cannot agree with the division's reading of our prior
 cases to support the notion that a proceeding must share more
 features of the judicial process for absolute privilege to
 apply than are required for the proceeding to be reviewable
 under C.R.C.P. 106(a)(4). We recognize that the
 division's justification in creating a new rule for
 determining when a proceeding is quasi-judicial for absolute
 privilege is rooted in a reasonable concern that, while
 people must be encouraged to participate candidly in a
 quasi-judicial proceeding, they must also be accountable for
 "malicious falsehoods." Gonzales, ¶
 44, 540 P.3d at 1282 (quoting Khan v. Yale Univ.,
 295 A.3d 855, 863 (Conn. 2023)). More procedural safeguards,
 the division reasoned, would balance reliability and
 fundamental fairness. Id. at ¶ 50, 540 P.3d at
 1283. But by accounting for this concern in answering the
 threshold question of whether a proceeding is quasi-judicial,
 the division improperly blended the due process question with
 the definitional assessment of whether a proceeding is
 quasi-judicial.
 
 
          ¶30
 Our holding today clarifies that these extremely important
 due process concerns are independent of the assessment of
 whether a proceeding is quasi-judicial. Just as a judicial
 proceeding itself can be found inadequate due to a lack of
 due process, so can a quasi-judicial proceeding. In neither
 case do we say the proceeding loses its character as judicial
 or quasi-judicial. Instead, it is fatally flawed for lack of
 due process.
 
 20
 
          ¶31
 And of course, the scope of absolute privilege does not
 shield an inadequate proceeding from judicial review for a
 violation of the accused's right to due process and
 cannot protect the accuser from policies to which they are
 accountable, with school discipline being just one example.
 
 
          ¶32
 We confronted a similar example in Stepanek v. Delta
 County, 940 P.2d 364, 370 (Colo. 1997), in which we
 concluded that, although the proceeding was quasi-judicial in
 nature and the attorney was absolutely immune from suit in
 tort, that immunity did not relieve the attorney from the
 rules governing the profession. Accordingly, sanctions could
 be levied against him. Id. Similarly, in
 Hoffler, although we concluded that the
 employee's statements were absolutely privileged, the
 employee was not protected from a personnel disciplinary
 proceeding brought by her employer. 27 P.3d at 376.
 
 
          ¶33
 Importantly, these remedies focus on the process itself and
 not the victim's participation in it. A lawyer is always
 subject to the rules governing the legal profession, an
 employee to basic codes of conduct, and of course, a student
 to school policy. A student who violates that policy by
 making dishonest statements in a Title IX investigation would
 be subject to whatever school disciplinary process applied.
 All of these remedies are very different from the threat of
 personal civil tort liability for participating in a
 quasi-judicial proceeding. While we are sympathetic to the
 division's concern about the possibility of untruthful
 
 21
 
 statements being made in quasi-judicial proceedings, the
 correct remedy for that possibility lies within the
 particular system-not in a split definition of
 quasi-judicial. Not only do we see no need to rewrite our
 definition of quasi-judicial into two separate inquiries, but
 we also worry that any effort to do so would lead to a
 cumbersome, heavily litigated threshold question that would
 ultimately deter participation in processes-like Title IX,
 employee discipline, and attorney regulation-that are
 designed to protect victims of misconduct.
 
 
          III.
 Application
 
 
          ¶34
 We now apply the quasi-judicial inquiry to the District's
 formal Title IX proceeding. The proper questions include
 whether (1) the District's Title IX proceeding addressed
 the interests of specific individuals and (2) the District
 applied preexisting laws or policy considerations to present
 or past facts in reaching its decision.
 
 
          ¶35
 After Ashley, Alexandra, and the other two students reported
 the allegations of harassment by Benjamin, the District
 opened a Title IX investigation. The District notified
 Benjamin and his parents that an investigation had been
 opened based on students' complaints about Benjamin's
 conduct and, later, that he had been found in violation of
 the school's existing policies.
 
 
          ¶36
 Because this proceeding involved consideration of the rights
 and obligations of a specific individual through the
 application of preexisting policies to present
 
 22
 
 and past facts, the proceeding was quasi-judicial. That is
 the end of our quasi-judicial inquiry. Therefore, any
 statements made during the District's Title IX proceeding
 are protected by absolute privilege and cannot be used as the
 basis for a civil lawsuit against the participant who made
 those statements. The possibility that the proceeding did not
 comply with the District's published grievance process
 has no bearing on whether the proceeding was quasi-judicial.
 Nor does the fact that it looked very little like a judicial
 process held in a court system. Instead, these matters raise
 due process concerns about the Title IX proceeding. These are
 extremely important questions, but, again, they are different
 from those at issue in this case.
 
 
          IV.
 Conclusion
 
 
          ¶37
 Absolute privilege allows individuals to participate in
 fact-finding processes-like Title IX investigations, attorney
 regulation proceedings, or employee discipline
 proceedings-without fear that their participation will serve
 as the basis for lawsuits against them. See
 Stepanek, 940 P.2d at 368 ("The purpose behind a
 grant of absolute immunity is to preserve the independent
 decision-making and truthfulness of critical judicial
 participants without subjecting them to the fear and
 apprehension that may result from a threat of
 personal liability." (emphases added)). The
 underlying defamation and intentional infliction of emotional
 distress claims subject Ashley and Alexandra to the threat of
 civil tort liability in a
 
 23
 
 way that could discourage victimized students from reporting
 harassment out of fear that they, too, would be subject to
 personal tort liability. The possibility that a student who
 reported harassment or even an assault might then face civil
 tort litigation-and possibly liability-for statements made
 during the reporting procedure is very likely to deter use of
 that reporting system.
 
 
          ¶38
 Because we hold that there is only one type of quasi-judicial
 inquiry, we reverse the judgment of the court of appeals and
 remand for further proceedings consistent with this opinion.
 
 
 ---------
 
 
 Notes:
 
 
 [1] For the remainder of this opinion, we
 refer to all students by their first names only. The
 Petitioners filed a motion asking that the students be
 referred to only by their initials, given that the events
 that initiated this dispute occurred when all of the students
 were minors. We have denied that motion because the
 students' full names were used in the court of
 appeals' opinion and in briefing before this
 court.
 
 
 [2] "SLAPP" is an acronym for
 strategic lawsuits against public participation. Section
 13-20-1101(1)(a) begins by setting forth the
 legislature's intent: "The general assembly finds
 and declares that it is in the public interest to encourage
 continued participation in matters of public significance and
 that this participation should not be chilled through abuse
 of the judicial process." It goes on to explain that the
 purpose of the statute "is to encourage and safeguard
 the constitutional rights of persons to petition, speak
 freely, associate freely, and otherwise participate in
 government to the maximum extent permitted by law and, at the
 same time, to protect the rights of persons to file
 meritorious lawsuits for demonstrable injury." §
 13-20-1101(1)(b).
 
 
 [3] The evidence in the record includes a
 link to the District's website detailing its Title IX
 procedures, which indicates the page was copyrighted in 2022.
 The division's opinion explained that, during oral
 argument, defendants' counsel asserted that the
 procedures outlined in that link were the same in 2018. We
 thus review the District's procedure from the website as
 the procedure in place in 2018. However, we acknowledge that
 the parties are not in agreement about which procedures were
 formally in place at that time. In any event, since the
 status of a proceeding as quasi-judicial does not turn on the
 particulars of the processes being used beyond the
 application of existing law or policy to the rights or
 obligations of particular individuals in light of present or
 past facts, our analysis would not change.
 
 
 [4] Section 13-20-1101(2)(a)(I) includes
 among protected proceedings "[a]ny written or oral
 statement or writing made [in] ... any other official
 proceeding authorized by law."
 
 
 [5] The court granted the motion with
 respect to some of the communications at issue because it
 concluded that they were protected under the anti-SLAPP
 statute due to qualified immunity.
 
 
 [6] We granted certiorari to review the
 following issue:
 
 
 1. Whether the doctrine of absolute privilege applies
 to statements made in connection with a public school
 district's formal Title IX investigation.
 
 
 [7] The parties here, and much prior
 caselaw, use "absolute privilege" and
 "absolute immunity" interchangeably. They are not
 the same thing. The distinction is that absolute privilege
 protects statements made by participants in a quasi-judicial
 proceeding-decisionmakers, witnesses, and the like- from use
 in a subsequent tort suit. Absolute immunity completely
 protects those participants from suit based not only on their
 statements, but also on a broad spectrum of conduct.
 Churchill, ¶ 39, 285 P.3d at 999. This case
 focuses on whether the statements made by Ashley, Alexandra,
 and their mothers are privileged from use in a tort suit
 against them.
 
 
 [8] The division also relied on
 Churchill. Gonzales, ¶ 45, 540 P.3d at 1282.
 But Churchill is an application of federal immunity
 law in an importantly distinguishable context, not an
 application of Cherry Hills. In Churchill,
 we determined that the members of the Board of Regents of the
 University of Colorado were absolutely immune from liability
 for their decision to terminate a former professor because
 their decision to terminate was a quasi-judicial action. 285
 P.3d at 991. In support of that finding, we relied
 exclusively on federal common law regarding absolute immunity
 because the underlying claim was a federal action pursuant to
 42 U.S.C. § 1983, not a state civil claim.
 Churchill, ¶ 28, 285 P.3d at 996 n.7
 ("[W]e resolve the federal question of absolute immunity
 based only on federal law."). We declined to apply the
 quasi-judicial inquiry articulated in our C.R.C.P. 106(a)(4)
 caselaw not because, as the division reasoned, quasi-judicial
 in 106(a)(4) cases is defined more broadly than it is for
 absolute privilege, but because it is defined more broadly
 than quasi-judicial in federal absolute immunity
 caselaw.
 
 
 [9] Benjamin did, in fact, file a federal
 lawsuit against the District asserting a violation of Title
 IX and of his right to due process in violation of 42 U.S.C.
 § 1983, in relation to both the initial and the reopened
 Title IX investigations.
 
 
 ---------