25CA0258 Gottorff v Fuhuere 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0258
Garfield County District Court No. 24CV21
Honorable Denise Lynch, Judge

---

David J. Gottorff,

Plaintiff-Appellant,

v.

Patrick Fuhuere, Warden of the Correctional Center; Anthony Johnson, Major of the Rifle Correctional Center; Lee Terraz, Case Manager for the Rifle Correctional Center; and Felicia Cobrado, Case Manager for the Rifle Correctional Center,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Welling and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

David J. Gottorff, Pro Se

Philip J. Weiser, Attorney General, Christopher B. Synsvoll, Senior Assistant Attorney General, Denver, Colorado, for Defendants-Appellees

¶ 1     Plaintiff, David Gottorff, appeals the dismissal of his C.R.C.P. 106 complaint against defendants, Patrick Fuhuere, Anthony Johnson, Lee Terraz, and Felicia Cobrado — the warden and other employees of Rifle Correctional Center (RCC).[1]  We affirm.

## I.     Background

¶ 2     Gottorff is an inmate in the custody of the Colorado Department of Corrections (CDOC).  In 2023, he was convicted of several charges and sentenced to eight years in prison.  A year earlier, he had been acquitted of a separate charge.  Gottorff claims that during his first trial — the one that resulted in an acquittal — he witnessed jury tampering and reported it to law enforcement.

¶ 3     Gottorff was housed at RCC from May 14 to July 9, 2024.  While there, he filed multiple grievances, alleging that his detention was unlawful because his convictions were the result of jury tampering.  He also alleged that he had not been given reasonable access to the law library.  Each grievance was denied.

---

[1] It appears from the record that the correct surnames for the defendants identified in the case caption as Terraz and Cobrado are "Terrazas" and "Colorado."

¶ 4 On July 3, an RCC case manager recommended an increase in Gottorff's custody classification, explaining that Gottorff was "[n]o longer appropriate for a level I facility" because he was "pending investigation and non-program compliant." A committee approved the recommendation, and on July 9, Gottorff was transferred from RCC — a level I facility — to the Buena Vista Minimum Center (BVMC) — a level II facility. In advance of that move, on July 2, Gottorff was placed in the restrictive housing unit (RHU) at RCC.

¶ 5 Gottorff appealed his reclassification and also challenged his placement in the RHU. A CDOC officer upheld the reclassification, stating, "You were removed from population per [DOC Admin. Reg.] 650-03. All CDOC regulations were adhered to in this case."

¶ 6 Gottorff then initiated this action under C.R.C.P. 106. In his complaint, he alleged that he had been placed in the RHU without justification, that his custody reclassification was "falsified," and that his placement in a level II facility was improper. He alleged that these actions were witness intimidation, done in retaliation for his report of witness tampering in connection with his criminal case. Gottorff asked the court to (1) order defendants to report the

alleged criminal conduct; (2) fine defendants for placing him in the RHU; and (3) order that he be placed in a level I facility.[2]

¶ 7    Defendants moved to dismiss the complaint. They argued that the district court lacked subject matter jurisdiction to review Gottorff's classification and placement in the RHU because those actions were not judicial or quasi-judicial decisions. They also argued that, to the extent Gottorff sought to compel defendants to transfer him to another facility or report his criminal allegations, his claims failed because defendants had no duty to do so.

¶ 8    The district court granted the motion to dismiss. It agreed that it lacked subject matter jurisdiction to review Gottorff's placement in the RHU, his custody reclassification, and his transfer of facilities because those were administrative decisions. And it rejected Gottorff's other claims because (1) the transfer of prisoners is discretionary; (2) Gottorff had other remedies available for the

---

[2] Gottorff also requested additional access to the law library. That claim is not at issue in this appeal.

alleged unlawful detention; and (3) CDOC employees had no duty to report the alleged jury tampering during Gottorff's first trial.[3]

¶ 9    Gottorff had also filed a motion to compel Moses Stancil, the Executive Director of the CDOC, to "comply with" the Victim Rights Act (VRA), §§ 24-4.1-300.1 to -305, C.R.S. 2025, by releasing Gottorff.  After granting the motion to dismiss, the court denied Gottorff's motion as moot because the case had been dismissed.

¶ 10    Gottorff then filed a "Notice of Intent to Petition to Require Prosecution" of defendants under section 16-5-209, C.R.S. 2025, along with a motion indicating that he had been prevented from filing the petition due to a lack of access to legal resources.  He filed the petition the same day he filed his notice of appeal in this case, asserting that defendants should be prosecuted for kidnapping and other crimes for, among other things, placing him in "administrative segregation" and transferring him to a higher security facility.  The district court denied the motion, concluding that it had no jurisdiction to order the requested prosecution.

---

[3] The district court also dismissed the claims against all defendants other than the warden under C.R.C.P. 106.5(b), which provides that "[o]nly the Executive Director of the CDOC and the warden of the facility shall be named as Defendants" in an action under that rule.

4

## II. RHU Placement

¶ 11    Gottorff first contends that the district court erred by dismissing his claim regarding his placement in the RHU for lack of subject matter jurisdiction because such placement was a quasi-judicial action reviewable under C.R.C.P. 106(a)(4).  We disagree.

### A. Applicable Law and Standard of Review

¶ 12    C.R.C.P. 106(a)(4) provides for relief when "any governmental body or officer . . . exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law."  A district court's subject matter jurisdiction under C.R.C.P. 106(a)(4) is limited to the review of judicial or quasi-judicial actions.  *See Chellsen v. Pena*, 857 P.2d 472, 475 (Colo. App. 1992).

¶ 13    In determining whether a government action is quasi-judicial, "[t]he central focus . . . should be on the nature of the governmental decision and the process by which that decision is reached."  *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 627 (Colo. 1988).  An action is quasi-judicial if "it involves (1) a determination of the interests, rights, or duties of specific

individuals and (2) the application of current law or policy to past or present facts." *Hushen v. Gonzales*, 2025 CO 37, ¶ 7.

¶ 14     We review de novo a district court order dismissing a complaint for lack of subject matter jurisdiction, including whether the challenged action is quasi-judicial. *People v. Jones*, 222 P.3d 377, 379 (Colo. App. 2009); *Garcia v. Harms*, 2014 COA 154, ¶ 11.

## B.     Analysis

¶ 15     Gottorff concedes on appeal that his custody reclassification and facility placement are administrative decisions that are not subject to judicial review under C.R.C.P. 106(a)(4).  But likening his placement in the RHU to the administrative segregation at issue in *Baldauf v. Roberts*, 37 P.3d 483, 484-85 (Colo. App. 2001), he argues that such placement was a reviewable quasi-judicial action.

¶ 16     In *Baldauf*, CDOC officials had placed the plaintiff in administrative segregation pursuant to a regulation that required notice and a hearing.  *Id.* at 484.  The applicable regulation required that decision to be "based on the evidence presented at the hearing and on the criteria for such classification" set forth in the regulation.  *Id.*  Concluding that there was "no meaningful distinction" between those procedures and CDOC disciplinary

procedures, the division held that "administrative segregation actions" *under that regulation* were quasi-judicial actions subject to judicial review under C.R.C.P. 106(a)(4). *Id.* at 484-85; *see also Buenabenta v. Neet,* 160 P.3d 290, 295 (Colo. App. 2007) (stating that the decision to place an inmate in administrative segregation under the same regulation as in *Baldauf* was quasi-judicial).

¶ 17    But Gottorff was placed in the RHU under a different regulation. *See* DOC Admin. Reg. 650-03. Although Regulation 650-03 requires a hearing when an inmate is placed in the RHU *as a disciplinary measure*, it also allows an inmate to be temporarily placed in the RHU "pending reclassification and facility transfer." DOC Admin. Reg. 650-03(IV)(A)(2), (3)(a).[4] The only procedures required for such placement are those that govern offender classification. *See id.*; DOC Admin. Reg. 600-01. Unlike the regulation at issue in *Baldauf*, there is no hearing, no presentation of evidence, and no criteria to apply. *See Baldauf*, 37 P.3d at 484.

---

[4] The regulation also allows an inmate to be removed from the general population and placed in the RHU for security or investigative purposes. DOC Admin. Reg. 650-03(IV)(A)(1).

¶ 18    There is nothing to indicate that Gottorff was placed in the RHU as a disciplinary sanction.  Instead, the record indicates that he was placed there pending his reclassification and transfer to a new facility — which occurred one week later.  *See* DOC Admin. Reg. 650-03(IV)(A)(3)(a) (allowing placement in RHU pending reclassification and transfer for up to fifteen days).  Such placement was not based on a fact-specific application of the law.  *See Hushen,* ¶ 7.  It was based on the administrative decision to transfer and reclassify him.  Thus, the placement was likewise administrative.

¶ 19    It is true that notice and a hearing are not *required* for an action to be quasi-judicial.  *See Cherry Hills*, 757 P.2d at 627.  But such procedures are nevertheless a "clear signal" that it is.  *Id.*  And wholly apart from the lack of a hearing requirement, the temporary placement of an inmate in the RHU pending a facility transfer — with no apparent consideration of any other facts — does not "bear[] similarities to the adjudicatory function performed by courts." *Widder v. Durango Sch. Dist. No. 9-R,* 85 P.3d 518, 527 (Colo. 2004).

¶ 20     Thus, because Gottorff's placement in the RHU was not a quasi-judicial action, the district court correctly dismissed Gottorff's C.R.C.P. 106(a)(4) claim for lack of subject matter jurisdiction.[5]

### III.  Duty to Report Alleged Criminal Misconduct

¶ 21     Though not listed as a separate issue on appeal, Gottorff also argues that the district court erred by not ordering defendants to report his allegedly unlawful detention — which he claims constitutes a "kidnapping," among other crimes.  But other than repeating his claim that his convictions and remand were "void" and "criminal," he does not explain how the CDOC committed a crime by carrying out the sentence imposed in his criminal case.  Such allegations do not establish a "clear duty" to report that custody as a crime — particularly when Gottorff claims the inspector general

---

[5] To the extent Gottorff asserts that his placement in the RHU violated his constitutional rights, that argument is beyond the scope of his C.R.C.P. 106(a)(4) claim.  *See Hushen v. Gonzalez*, 2025 CO 37, ¶ 28 (noting that question of due process is distinct from whether an action is quasi-judicial); *Sundheim v. Bd. of Cnty. Comm'rs*, 904 P.2d 1337, 1345 (Colo. App. 1995) (explaining that C.R.C.P. 106 does not provide a damages remedy), *aff'd*, 926 P.2d 545 (Colo. 1996); *see also Green v. Nadeau*, 70 P.3d 574, 577 (Colo. App. 2003) (holding that a prisoner does not have a protected liberty interest in a security classification or the procedures by which that decision is reached).

*did* investigate his allegations. *See Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875, 877 (Colo. App. 2003) ("Mandamus is appropriate only when . . . the agency has a clear duty to perform the act requested . . . ."); § 17-1-103.8(2)(a), C.R.S. 2025 (requiring the inspector general to "investigate, detect, and prevent any crimes").

## IV.  Victim Rights Act

¶ 22    Gottorff next contends that the district court erred by denying his motion to compel Executive Director Stancil to comply with the VRA.[6]  Gottorff asserts that he is a witness and victim of a crime because, by keeping him in custody, CDOC officials are "kidnapping" him and "intimidating" him in retaliation for reporting the allegations of jury tampering in his criminal case.

¶ 23    The district court denied Gottorff's motion as moot because, having dismissed the case, there was no longer any live dispute to which the motion could attach.  Gottorff does not challenge that basis for the district court's ruling.  *See People v. Archer*, 2022 COA

---

[6] Stancil is not a party to the lawsuit or the appeal.  *See Foothills Meadow v. Myers*, 832 P.2d 1097, 1098 (Colo. App. 1992) ("A court may not adjudicate the rights of persons not before it.").

10

71, ¶ 42 (holding that we must affirm the district court's ruling when the appellant does not challenge the grounds for the ruling).

¶ 24 In any event, as Gottorff appears to acknowledge, "[t]he VRA does not give legal standing to an alleged crime victim." *People v. Blagg*, 2015 CO 2, ¶ 21 n.4; *see also Puerta v. Newman*, 2023 COA 100, ¶ 21 (holding that the VRA "does not grant crime victims the right to compel a sheriff's office to process evidence"). Only the Attorney General has standing to file suit to "enforce compliance" with the VRA. *Newman*, ¶ 23 (quoting § 24-4.1-303(17), C.R.S. 2025). Thus, even if Gottorff were a victim of the crimes he alleges, his sole means of enforcing compliance with the VRA would be "by notifying the crime victim services advisory board." § 24-4.1-303(17). He would not be entitled to a court order. And of course, no provision of the VRA would grant him the relief he asked for — release from custody pursuant to a judgment of conviction.

## V.     Petition for Prosecution

¶ 25 Gottorff also argues that the district court erred by denying his petition to require prosecution of defendants — for kidnapping, accessory to jury tampering, and intimidating a witness — under section 16-5-209. But Gottorff filed that petition the same day he

filed the notice of appeal. And when the district court denied the petition nearly three months later, Gottorff did not amend his notice of appeal or file a new one. We therefore lack jurisdiction to review that order. *See In re Estate of Anderson*, 727 P.2d 867, 869-70 (Colo. App. 1986) (holding that court lacked jurisdiction over appeal of order entered after notice of appeal).

¶ 26 We nevertheless reiterate that Gottorff has offered no substantive factual and legal basis for his allegations that defendants have committed any crimes. *See Sandoval v. Farish*, 675 P.2d 300, 303 (Colo. 1984) ("The party challenging the district attorney's charging decision must overcome the presumption that the prosecutor acted in accordance with the law and prove by clear and convincing evidence that the prosecutor's decision was arbitrary or capricious and without reasonable excuse.").

## VI. Disposition

¶ 27 The judgment is affirmed.

JUDGE WELLING and JUDGE LUM concur.

12